NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 09a0184n.06
Filed: March 9, 2009

No. 07-6358

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| CHARLES R. WILLIAMS, III, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**Before: BOGGS, Chief Judge; KETHLEDGE, Circuit Judge; and THAPAR, District Judge.[*]**

**THAPAR, District Judge.** Defendant Charles R. Williams, III, was convicted of misprision

of a felony in violation of 18 U.S.C. § 4. The court sentenced the defendant to a 30-month term of

imprisonment. On appeal, the defendant argues that his conviction should be overturned because

it was obtained in violation of the Fifth Amendment. In the alternative, he argues that his sentence

should be vacated because the district court relied on acquitted conduct in determining the sentence.

Because these arguments are unavailing, we affirm the defendant's conviction and sentence.

The defendant's conviction of misprision of a felony stems from his involvement in a drug

theft that occurred on April 30, 2003. At the time of this incident, the defendant was a Nashville,

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

Tennessee, police officer.

On April 30, Officer Ernest Cecil—another Nashville police officer—asked the defendant to assist him in arresting a drug dealer. Officer Cecil informed the defendant that they would arrest the drug dealer after he had engaged in a controlled transaction with a confidential informant. The defendant agreed to assist Officer Cecil, and the two of them traveled to a location in Nashville where the controlled transaction was supposed to take place. After the drug dealer drove past the defendant and Officer Cecil, the defendant—who was driving the police car—pursued the drug dealer and initiated a traffic stop. Before the stop occurred, however, Officer Cecil informed the defendant that he intended to steal drugs from the drug dealer, not arrest him. The defendant protested, but did nothing to stop Officer Cecil and did not report the theft.

This incident remained undetected by the authorities for the next year-and-a-half. In late 2004, however, the Nashville Police Department received information regarding the theft. Accordingly, it opened an internal investigation. As part of the investigation, Lieutenant Mitchell Fuhrer interviewed the defendant on April 13, 2005. Lieutenant Fuhrer told the defendant that he wanted to talk about the traffic stop that the defendant and Officer Cecil had conducted on April 30, 2003. The defendant said that he remembered that traffic stop, and he further stated that he and Officer Cecil stopped a suspect's car, searched the vehicle and the suspect, and found neither drugs nor guns. This interview satisfied Lieutenant Fuhrer that nothing untoward had happened, so he closed the investigation. Shortly thereafter, however, the defendant went to Lieutenant Fuhrer's office, recanted his story, and told the truth—or at least got closer to telling the truth.

The DEA later became involved in the case, and the defendant gave inconsistent statements to DEA agents as well. The defendant originally told the DEA agents that Officer Cecil had

2

informed the defendant of the intended theft after the traffic stop. Later, after failing a polygraph examination, the defendant admitted to DEA agents that he had been informed of the planned theft before initiating the traffic stop. As a result of these events, the defendant was indicted on four counts on January 25, 2006. On August 30, 2006, a superseding indictment was filed. The superseding indictment added two charges, misprision of a felony being one of them.

Before trial, the defendant moved to suppress the statements that he made to the Nashville Police Department and the DEA. He claimed that the admission of those statements would violate his Fifth Amendment right against self-incrimination as interpreted by *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), which held that incriminating statements made by public officials under a threat of removal from their positions are the result of coercion and therefore may not be used in subsequent criminal proceedings against them. The district court rejected this argument. It concluded that *Garrity* was not applicable to the defendant's situation because the defendant was never threatened with termination for failing to give a statement, nor did the defendant believe that he would be terminated for failing to give a statement.

After the court denied his motion to suppress, the case proceeded to trial, where the defendant was acquitted of all charges except misprision of a felony. Following his conviction, the court sentenced the defendant to 30 months in prison. In determining the defendant's term of imprisonment, the district court relied on a Sentencing Guidelines offense level that was enhanced on the basis of acquitted conduct. According to the defendant, this was a violation of his constitutional rights. However, after the recent en banc decision in *United States v. White*, 551 F. 3d 381, 386 (6th Cir. 2008), it is clear that the Constitution does not prohibit sentencing enhancements that are based on acquitted conduct. Therefore, the defendant's argument in this

3

regard is without merit and need not be addressed further.

The defendant also argues that he cannot be convicted of a crime for failing to report the drug theft because the Fifth Amendment gave him the right to refrain from reporting it. As a threshold matter, the problem with this argument is that it is being raised for the first time on appeal. To be sure, the defendant presented a Fifth Amendment argument to the district court when he argued that his statements to the Nashville Police Department and the DEA must be considered coerced and therefore inadmissible in light of *Garrity*. However, the fact that the defendant raised a Fifth Amendment issue at trial obviously does not mean that he raised every conceivable Fifth Amendment issue. The Fifth Amendment argument that the defendant now seeks to assert before this court is fundamentally different than the one he presented to the district court. Rather than arguing that the Fifth Amendment precludes the admission of his statements, the defendant is now arguing that the Fifth Amendment precludes his conviction altogether. The profound difference between these two arguments makes it clear that the defendant is now attempting to assert an argument that was never presented to the district court.

When an issue is not raised in the district court, the general rule is that it should not be considered on appeal. *See United States v. Hayes*, 218 F.3d 615, 619 (6th Cir. 2000). However, "this is a prudential rule, not a jurisdictional one." *Id.* (citing Fed. R. Crim. P. 52(b); *Austin v. Healey*, 5 F.3d 598, 601 (2d Cir. 1993); *United States v. Finch*, 998 F.2d 349, 354-55 (6th Cir. 1993)). Therefore, this court is not deprived of authority to consider an argument simply because it was not first presented to the district court.[1] Instead, this court has discretion to consider the

---

[1] It is true that the Sixth Circuit has previously held that it is precluded from considering some constitutional arguments that were not presented to the district court, *see, e.g., United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994), but those cases do not apply here.

argument under Rule 52(b) of the Federal Rules of Criminal Procedure, which permits this court to correct plain errors even though they were not brought to the attention of the district court. *See United States v. Miller*, 316 F.2d 81, 84 (6th Cir. 1963). Refusing to consider the defendant's Fifth Amendment argument would be well within this court's discretion. Indeed, it might be more appropriate to ignore the argument since considering it might encourage defendants to sandbag district courts and the Government in some instances. Nevertheless, it ultimately makes no difference whether the argument is considered. If it is not considered, then the defendant plainly cannot prevail. Likewise, if the argument is considered, the defendant cannot win because this is not a case in which the plain error doctrine can be invoked.

"[T]he plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Phillips*, 516 F.3d 479, 487 (6th Cir. 2008) (quoting *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992)). The defendant's Fifth Amendment argument, however, does not demonstrate that a miscarriage of justice has occurred in this case. Given that the Fifth Amendment provides defendants with a privilege to remain silent, *see, e.g., United States v. Steele*, 933 F.2d 1313, 1320-21 (6th Cir. 1991), it may be true that a defendant cannot be convicted of misprision of a felony simply because of a failure to report a crime.

---

Those cases are distinguishable on the ground that they involve the application of Rule 12 of the Federal Rules of Criminal Procedure. Rule 12(b)(3) mandates that certain issues are waived—and therefore unreviewable on appeal—if not made before trial. Among these issues are defects in the indictment. *See* Fed. R. Crim. P. 12(b)(3)(B). The Government contends that the defendant's Fifth Amendment argument is such an issue, but this is not so. The reference in Rule 12 to "defects in the indictment" pertains to technical errors, such as the allegation of duplicitous counts. *See United States v. Kakos*, 483 F.3d 441, 444 (6th Cir. 2007). The defendant's Fifth Amendment argument, however, is one of substance, not form. Therefore, it has not been waived under Rule 12. *See United States v. Harrod*, 168 F.3d 887, 890 (6th Cir. 1999). As a result, this court is not jurisdictionally prevented from considering the defendant's Fifth Amendment argument.

Nevertheless, that point is irrelevant here because the defendant's conviction did not stem from his silence. Instead, the defendant was convicted because when he chose to speak he lied to the authorities. While the Fifth Amendment may protect the defendant's right to remain silent, it does not give him the right to lie once he chooses to speak. *See Brogan v. United States*, 522 U.S. 398, 404-05 (1998) ("[N]either the text nor the spirit of the Fifth Amendment confers a privilege to lie. '[P]roper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely.'" (quoting *United States v. Apfelbaum*, 445 U.S. 115, 117 (1980)) (second alteration in original)). Thus, there is no constitutional error in convicting an individual of misprision of a felony on the basis of false statements made to the authorities. Accordingly, the plain error doctrine cannot be invoked since there has been no miscarriage of justice.

For the foregoing reasons, we AFFIRM the district court.